UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DEBRA M. P.,[1] | : | Case No. 3:19-cv-0028 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Debra M. P. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record (Doc. #4), and the Decision and Entry Rejecting United States Magistrate Judge's Report and Recommendations and Recommitting Matter to Magistrate Judge for Initial Consideration of Plaintiff's Statements of Errors (Doc. #14).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

1

"any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on November 17, 2014, alleging disability due to several impairments, including Sjogren's Syndrome, rheumatism and fibrositis, osteoarthritis of more than one site, rheumatoid arthritis, fatigue, irritable bowel syndrome (IBS), palpations, tachycardia, anxiety, and hypercholesterolemia. (Doc. #4-6, *PageID* #274).  After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Mark Hockensmith on April 23, 2018. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420.  He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 22, 2011, through her date last insured of March 31, 2018. |
| Step 2: | | Through the date last insured, she had the following severe impairments: Sjogren's syndrome, fibromyalgia, rheumatoid arthritis, osteoarthritis, mild scoliosis, mild peripheral neuropathy, Raynaud's disease, depression, and panic disorder. |
| Step 3: | | Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Through the date last insured, her residual functional capacity, or the most she could have done despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … [with] occasionally lifting/carrying twenty pounds; frequently |

>>lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight-hour workday. [Plaintiff] cannot climb ladders/ropes/scaffolds. She is capable of occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. She should avoid concentrated exposure to temperature extremes as well as humidity. [She] cannot work around unprotected heights or dangerous machinery. She is limited to frequent overhead reaching, bilaterally. [She] is limited to frequent handling and fingering, bilaterally. [Plaintiff] is limited to routine short-cycle tasks in a static work environment with few changes in routine. She should have no fast-paced work or strict production quotas."
>
>>Through the date last insured, she was unable to perform any past relevant work.
>
>Step 5:   Through the date last insured, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

(Doc. #4-2, *PageID* #s 41-55).  Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 22, 2011, the alleged onset date, through March 31, 2018, the date last insured.  *Id.* at 55.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #4-2, *PageID* #s 42-54), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.   Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270,

3

273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

The Court recommitted this matter to the Magistrate Judge to consider Plaintiff's Statement of Errors. *See* Doc. #14. Plaintiff's Statement of Errors advances four primary arguments: (1) the ALJ failed to apply the "Borderline Age Policy," (2) he improperly evaluated the medical evidence, (3) he improperly assessed her mental residual functional capacity (RFC), and (4) he failed to consider the vocational expert's (VE) testimony. (Doc. #8, *PageID* #s 1194-1200). The Commissioner asserts that the ALJ did not violate the "Borderline Age Policy," that he reasonably evaluated the medical evidence in the record and Plaintiff's mental impairments, and that he reasonably relied on the VE testimony. (Doc. #11, *PageID* #s 1208-14).

4

### A. Borderline Age Policy

Plaintiff argues that the ALJ failed to consider and apply the "Borderline Age Policy" under 20 C.F.R. § 404.1563(b). (Doc. #8, *PageID* #s 1194-96). Under that Regulation, if a plaintiff is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [a plaintiff] [is] disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [a plaintiff's] case." 20 C.F.R. § 404.1563(b). According to Plaintiff, if she was placed in the higher age category of 55, she would have been entitled to a presumption of disability on November 13, 2018. *Id*. at 1194-96; *see* Grid Rule 202.06; 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age…"). However, the Commissioner contends that six months is the maximum threshold that can be considered by the ALJ and Plaintiff was 54 years old on March 31, 2018, her date last insured, nearly eight months before her November birthday. (Doc. #11, *PageID* #1209) (citing 20 C.F.R. § 404.1563(b); HALLEX I-2-2-42; POMS DI 25015.006); *see* 20 C.F.R. §§ 404.1563(d) ("If [a plaintiff] [is] closely approaching advanced age (age 50-54), we consider that [her] age along with a severe impairment(s) and limited work experience may seriously affect [her] ability to adjust to other work.").

When interpreting the HALLEX and POMs manual guidelines, courts in this circuit have held that six months is the maximum threshold under 20 C.F.R. § 404.1563(b). *See Wohler v. Saul*, No. 1:19CV56, 2020 WL 1531296, at *13 (N.D. Ohio Mar. 31, 2020) (collecting cases that indicate six months is the maximum threshold); *Sizemore v. Astrue*, No. 09-CV-109-KCC, 2010

5

WL 3001711, at *6 (E.D. Ky. July 28, 2010) (holding that seven and a half months was too long a time period between the date of adjudication and the plaintiff's birthday to present a borderline age situation).  If referencing Plaintiff's date last insured, as the Commissioner does, Plaintiff's case would not present a borderline age situation, as it is nearly eight months before her fifty-fifth birthday.  *See* Doc. #11, *PageID* #1209.  However, as Plaintiff notes, the date of adjudication is also an acceptable reference point when considering the timeline for a borderline age situation.  (Doc. #8, *PageID* #1195) (citing 20 C.F.R. § 404.1563(c)).  In this case, the date of adjudication was July 3, 2018, four months and ten days before Plaintiff reached the age of fifty-five.  (Doc. #4-2, *PageID* #56).  Therefore, Plaintiff is correct that she presented a borderline age situation that the ALJ should consider.  (Doc. #8, *PageID* #s 1194-96).

Nonetheless, Plaintiff's argument ultimately fails because, under Sixth Circuit precedent, the ALJ sufficiently considered her case for the borderline age situation.  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395 (6th Cir. 2008).  To constitute substantial evidence for his decision and comply with 20 C.F.R. § 404.1563(b), an ALJ need not specifically "address borderline age categorization in every borderline case." *Bowie*, 539 F.3d at 399. The borderline cases that require the ALJ to specifically address the borderline age categorization are those when plaintiffs possess "additional vocational adversities" that would weigh toward the ALJ placing them in the higher age category. *Bowie*, 539 F.3d at 397-98.  Such "additional vocational adversities" include "the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled

6

job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry)." *Hassan v. Comm'r of Soc. Sec.*, No. 2:14-CV-14407, 2015 WL 12681368, at *14 (E.D. Mich. Dec. 7, 2015), *report and recommendation adopted*, No. 14-14407, 2016 WL 1156739 (E.D. Mich. Mar. 24, 2016) (citing HALLEX II-5-3-2).  These additional vocational adversities are also placed on a sliding scale; the further removed in time the plaintiff is from the higher category, the more vocational adversities must be shown by plaintiff to justify the use of the higher category. *Id*.  If the plaintiff does not demonstrate additional vocational adversities to justify the use of the higher age category, "the adjudicator will use the [plaintiff's] chronological age—even when the time period is only a few days." *Id*.

In this case, Plaintiff has not demonstrated "additional vocational adversities" that would have led the ALJ to place her into the higher age category.  (Doc. #8, *PageID* #1186).  While Plaintiff points to medical records where her pain complaints increased with time, including an EMG in January 2017 that showed mild neuropathy in her lower extremities, the ALJ thoroughly accounted for her pain complaints and noted the January 2017 EMG specifically in his decision. *Id*.; (Doc. #4-2, *PageID* #51).  There is no indication in the record that Plaintiff is "barely literate in English" or "has a marginal ability to communicate in English"; in fact, she testified that she had a couple years of college and an LPN license. *Id*. at 129.  Finally, Plaintiff's prior work experience was semi-skilled or greater, and her positions of payroll clerk and licensed practical nurse are not considered isolated industries. *Id*. at 146-47; POMS DI 25015.006 (listing isolated industries as forestry, fishing, or mining).  In sum, absent additional vocational adversities, the

7

ALJ neither had to explain his borderline age situation determination nor was required to place Plaintiff in the higher age category. Therefore, Plaintiff's first argument is not well taken.

### B. Medical Evidence

Plaintiff argues that the ALJ "did not properly consider the treatment" she received from 2013-2018. (Doc. #8, *PageID* #1196). Specifically, she asserts that the ALJ's failure to consider her pain and fatigue complaints, her shoulder impairment, and notes of her "slow, cautious gait" is reflected in a physical RFC of light work. *Id*. at 1196-97. Plaintiff contends that the physical RFC failed to include limitations on reaching overhead, handling, fingering, and a lower weight-lifting capacity. *Id*. The Commissioner maintains that Plaintiff has waived her argument regarding the medical evidence because she does not point to contrary evidence or sufficiently explains how the ALJ erred in his analysis of the medical record. (Doc. #11, *PageID* #1210) (citing *Gragg v. Ky. Cabinet for Workforce Dev*., 289 F.3d 958, 963 (6th Cir. 2002)) ("Ordinarily, we will not consider issues that have not been fully developed by the briefs or in the record."). In the alternative, the Commissioner contends that the ALJ reasonably evaluated Plaintiff's medical evidence and substantial evidence supports his decision. *Id*. at 1210-11.

Unless an ALJ fails to support his findings with substantial evidence or fails to follow legal standards, the reviewing court must uphold the ALJ's decision. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004). Even if there are portions of the medical record that favors Plaintiff's position, if substantial evidence supports the ALJ, that is sufficient to affirm the ALJ's disability finding. *Frazier v. Comm'r of Soc. Sec.*, No. 19-11097, 2020 WL 1856202, at *11 (E.D. Mich. Mar. 11, 2020), *report and recommendation adopted sub nom. Frazier v. Saul*, No. 2:19-

CV-11097, 2020 WL 1847923 (E.D. Mich. Apr. 13, 2020).  However, if a Plaintiff fails "to address the medical evidence—e.g., highlighting the relevant evidence and explaining why the parts favorable to him are more probative than the countervailing reports—" that failure is "fatal to [her] argument." *Id*.

In this case, the ALJ sufficiently analyzed the entire medical record.  (Doc. #4-2, *PageID* #s 44-54).  The ALJ listed all the medical providers Plaintiff visited from 2013 through 2018, including her rheumatologists, and identified their findings of decreased range of motion in her shoulders and mild neuropathy in her lower extremities.  *Id*. at 46-54.  Accordingly, in his RFC assessment, the ALJ limited her to "frequent overhead reaching bilaterally" to account for her shoulders.  *Id*. at 51. However, he also explained that although mild neuropathy was detected in her lower extremities, Plaintiff reported that her pain was controlled by her current medications. *Id*. at 49.  Relying on Plaintiff's testimony of pain in her hands, he limited her to "frequent handling and fingering bilaterally."  *Id*. at 50.

Additionally, the ALJ recognized that at certain appointments, Plaintiff's ambulation was limited, or she had a slow and cautious gait.  *Id*. at 47.  However, the ALJ observed that there were also several records where Plaintiff exhibited a normal gait.  *Id*. at 47-50.  Thus, the ALJ concluded that Plaintiff could stand or walk six hours in an eight-hour workday.  *Id*. at 44.  Notably, Plaintiff has not cited one medical record or opinion that supported greater limitations than those assessed by the ALJ; in fact, she has not cited *any* medical evidence in the entire record, only citing to the ALJ's decision without any explanation of how the ALJ erred in his analysis.  (Doc. #8, *PageID* #s 1196-97).

Therefore, Plaintiff's second argument is not well taken.

### C. Mental RFC

Plaintiff argues that the ALJ's failure to include social "limitations with the public, coworkers, and supervisors" within her mental limitations produced a flawed mental RFC. (Doc. #8, *PageID* #s 1197-99). Plaintiff cites *Ealy v. Comm'r of Soc. Sec.* and *Gibbens v. Comm'r of Soc. Sec.* for the proposition that any case in which an ALJ finds moderate difficulties with "concentration, persistence, or pace" requires the inclusion of social limitations in the mental RFC. *Id*. (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th 2010); *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238 (6th Cir. 2016)). The Commissioner contends that the ALJ properly considered all the medical evidence—including the two state agency psychologists' opinions and psychological consultive examination—before concluding that Plaintiff did not require social limitations in her mental RFC. (Doc. #11, *PageID* #s 1211-13). Furthermore, the Commissioner argues that *Ealy* and *Gibbens* do not stand for the proposition that any case with moderate limitations in concentration, persistence, or pace requires social limitations in a plaintiff's mental RFC, but rather that each case is a fact-specific inquiry with the ALJ having broad discretion to formulate an appropriate RFC. *Id*. at 1213 (citing *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009)).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility

10

in determining a plaintiff's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner"). Additionally, it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue,* No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.), *report and recommendation adopted*, No. 1:09CV411, 2010 WL 3730981 (S.D. Ohio Sept. 8, 2010) (Dlott, D.J.).

The ALJ's role is to determine the RFC based on his evaluation of medial and non-medical evidence. Ultimately, "the ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019) (Bowman, M.J.), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019) (Dlott, D.J.).

Plaintiff's argument is not well taken, as her reliance on both *Ealy* and *Gibbens* is misplaced. In *Ealy*, the Sixth Circuit held that the ALJ's erred in failing to include social limitations advanced by the state agency psychologist opinion that he found persuasive and relied on in forming the basis of the plaintiff's RFC. *Ealy*, 594 F.3d at 516-17; *see also Reiff v. Comm'r of Soc. Sec.*, No. 3:18-CV-235, 2020 WL 858131, at *4 (S.D. Ohio Feb. 21, 2020) (Ovington,

11

M.J.). In this case, unlike *Ealy*, neither of the state agency psychologists or the psychological consultant opined that Plaintiff required social limitations. *See* Doc. #4-3 *PageID* #s 163-65, 182-84; Doc. #4-7, *PageID* #s 646-51. The ALJ recognized that although the psychologists did not opine that Plaintiff had social limitations, Plaintiff testified that her anxiety prevented her from grocery shopping. However, the ALJ found that the longitudinal record did not include evidence of "difficulties getting along with medical personnel or other patients" or "evidence of a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships or social isolations. There is no indication that [Plaintiff] is unable to maintain appropriate social relationships." *Id*. at 42-43. Therefore, the lack of social limitations in the record distinguishes Plaintiff's case from *Ealy*.

Similarly, *Gibbens* does not support Plaintiff's argument. While that case included a correlation between a social limitation of "limited capacity for interaction with others" with the ALJ's finding that the plaintiff had "moderate difficulties in concentration, persistence, and pace," the correlation was specifically "based on [plaintiff's] borderline intellectual capabilities." *Reiff*, 2020 WL 858131, at *4-5 (citing *Gibbens*, 659 F. App'x at 249-50). In this case, there is no evidence in the record that Plaintiff has borderline intellectual capabilities. Therefore, Plaintiff's argument is not well taken.

### D. VE Testimony

Finally, Plaintiff asserts that the ALJ's finding at step five because he "failed to consider necessary vocational expert testimony that fully encompassed [her] severe impairments." (Doc. #8, *PageID* #s 1199-1200). The Commissioner contends that the ALJ properly excluded

limitations from his RFC assessment that were not supported by the record. (Doc. #11, *PageID* #s 1213-14).

During the hearing, the ALJ posed a series of hypothetical questions to the VE, one of which included that the individual would require "two to three extra breaks a day anywhere from 10 to 15 minutes at a time . . . ." (Doc. #4-2, *PageID* #148). The VE testified that, "[i]t would eliminate my ability to identify competitive employment." *Id.* Further, in response to a hypothetical from Plaintiff's counsel, the VE testified that being off task 10% of the workday and being absent one day per month would also eliminate any employment opportunities. *Id.* at 148-49. In assessing Plaintiff's RFC, the ALJ ultimately decided not to include any of these limitations. *See id*. at 43-44. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #8, *PageID* #1200).

In assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (The ALJ is not required to incorporate a plaintiff's subjective complaints in hypothetical questions to the vocational expert if the ALJ finds them to be unsupported by the record as a whole). However, an ALJ errs if the physical or mental limitations

13

supported by the record do not appear in a hypothetical question later relied on in determining a plaintiff's RFC. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009).

In this case, as previously discussed, substantial evidence supports the ALJ's assessment of Plaintiff's RFC. The ALJ determined that Plaintiff's subjective complaints were not supported by the medical evidence or the record as a whole. (Doc. #4-2, *PageID* #s 51-54). Because the ALJ did not find these limitations supported by the medical evidence or other evidence in the record, the ALJ did not pose or rely on improper hypothetical questions. *Griffeth,* 217 F. App'x at 429. Therefore, Plaintiff's final argument is not well taken.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #8) be **OVERRULED;**

2. The Commissioner's non-disability determination be **AFFIRMED**; and

3. The case be terminated on the docket of this Court.

December 5, 2024

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

14

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).